**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
CENTRAL**

**MINUTE ORDER**

DATE: 12/16/2020                    TIME: 02:57:00 PM          DEPT: C-73

JUDICIAL OFFICER PRESIDING: Joel R. Wohlfeil
CLERK: Andrea Taylor
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00038194-CU-CR-CTL**  CASE INIT.DATE: 10/21/2020
CASE TITLE: **Midway Venture LLC vs County of San Diego [IMAGED]**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Civil Rights

**APPEARANCES**

The Court, having taken the above-entitled matter under submission on 12/16/2020 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

The Order to Show Cause (ROA # 1, 36, 38, 40, 49) for a Preliminary injunction by Plaintiffs MIDWAY VENTURE LLC dba PACERS SHOWGIRLS / PACERS SHOWGIRLS INTERNATIONAL, PETER BALOV, F - 12 ENTERTAINMENT GROUP INC. dba CHEETAHS, and RICH BUONANTONY ("Plaintiffs") against Defendants COUNTY OF SAN DIEGO, WILMA J. WOOTEN, in her official capacity as Public Health Officer, County of San Diego, GOVERNOR GAVIN NEWSOM, in his official capacity as the Governor of the State of California, and the CALIFORNIA DEPARTMENT OF PUBLIC HEALTH ("Defendants"), is GRANTED.

Pending the trial of this case, Defendants, and each of them and their respective agents and assigns, and any governmental entity or law enforcement officer, are hereby ENJOINED from enforcing the provisions of the cease and desist order, or any related orders including the State's Regional Stay Home Order, that prevent 1) Plaintiffs from providing live adult entertainment; and 2) San Diego County businesses with restaurant service, such as Plaintiffs' establishments, from continuing to operate their respective businesses, subject to protocols that are no greater than is essential to further Defendants' response to control the spread of COVID.

The Request (ROA # 29 at footnote 10) of Defendants Gavin Newsom, in his official capacity as Governor of California, and the California Department of Public Health (unless specified otherwise, collectively referred to as "the State") for judicial notice of the Watt Declaration, which was executed and filed on October 16, 2020, in <u>Calvary Chapel of Ukiah v. Newsom</u>, No.42:20-cv-01431-1CJMDMC (E. D. Cal. Oct. 16, 2020), as ECF No. 39, is GRANTED IN PART and DENIED IN PART. The Court takes judicial notice of the date on which the Watt Declaration was filed with the Court; otherwise, the Request is DENIED.

The evidentiary objections (ROA # 51) of Defendants COUNTY OF SAN DIEGO and WILMA J. WOOTEN (unless specified otherwise, collectively referred to as "the County") are OVERRULED IN

PART and SUSTAINED IN PART. The objections are OVERRULED except as follows: Nos. 3 – 5 are SUSTAINED.

Plaintiffs' evidentiary objections (ROA # 57) to the declaration of Brent Panas are OVERRULED; however, Panas' representation, at paragraph 5 ("On November 30, 2020, seventeen new community COVID-19 outbreaks were confirmed. For the seven-day period from November 24 through November 30, 2020, 81 community outbreaks were confirmed. The number of community outbreaks the County is experiencing and documenting remains far above the trigger of seven or more outbreaks in a seven-day period.") is vague and marginally relevant, if at all, to the limited issue before the Court; namely, whether Plaintiffs providing live adult entertainment **and** San Diego County businesses with restaurant service, such as Plaintiffs' establishments, subject to protocols, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.

Plaintiffs' evidentiary objections (ROA # 58) to the declaration of Dr. James Watt are OVERRULED IN PART and SUSTAINED IN PART. Plaintiffs' general objection to Dr. Watt's declaration (attached as Exh. "F" to the declaration of Attorney Li – ROA # 55) is well taken. The State appears to have caused Dr. Watt's declaration to be filed on November 30, 2020, in Ghost Golf, Inc. v. Newsom, No. 20CECG03170 (Fresno County Sup. Ct.). The Court will nonetheless receive the evidence as a proffer of proof from counsel of the testimony of Dr. Watt if he were called and sworn to testify as a witness in this case. The balance of Plaintiffs' objections are, except as noted, SUSTAINED. Nos. 1, 4, 7, 8 and 9 are OVERRULED.

Plaintiffs' objection to the declaration of Chelsea Kuhn, filed by the State on December 15, 2020, is SUSTAINED.

The County's Request for judicial notice of the Court's November 23, 2020 Order (ROA # 50) in the San Diego County Superior Court case entitled 640 Tenth LP vs. Newsom, case no. 37-2020-00041316-CU-MC-CTL, is GRANTED.

Plaintiffs operate Pacers and Cheetahs, adult entertainment establishments within the meaning of San Diego Municipal Code ("SDMC") section 33.3601 et seq. under Nude Entertainment Business Permit number 2010022137 issued by the Chief of the San Diego Police Department. Complaint at par's 1 – 4. Closed for months after the pandemic arose, deprived of direction from Defendants, and left to guess on how to re-open their establishments, Plaintiffs submitted a plan to the County which included the following restrictions:

"- Stages to be located on two (2) foot platforms, fifteen (15) feet from any tables.

- Stages to be roped off with signs strictly advising patrons not to pass within the fifteen-foot buffer.

- Adult entertainers to perform one artist at a time per stage.

- All stage equipment to be sanitized after a performance.

- All performers to wear mask coverings while performing.

- The announcer and disc jockey ("DJ") to be located fifteen (15) feet from any tables, roped off and designated for one person at a time.

- Audio stage to be sanitized and cleaned after every daily use.

- The announcer and DJ to wear a mask covering.

- The announcer and DJ to issue regular reminders to patrons that they are not to approach performers and they are to remain seated at their tables."  Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

Without objection from the County, Plaintiffs re-opened their establishments and provided indoor entertainment for approximately five weeks before receipt of Dr. Wooten's cease and desist letter. Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

Facing financial ruin, Plaintiffs have filed this action to contest Dr. Wooten's cease and desist letter, or any related orders, which prevent them from continuing to operate their respective businesses, subject to protocols.  Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

On November 6, 2020, the Court, after consideration of the briefs, evidence and arguments of counsel, issued a temporary restraining order ("TRO") enjoining Defendants from enforcing the provisions of the cease and desist orders, or any related orders, to prevent Plaintiffs from being allowed to provide live adult entertainment, pending an order to show cause ("OSC") re the issuance of a preliminary injunction. ROA # 36, 38, 40, 49.

Since re-opening, Plaintiffs have "implemented and followed all provisions of the State of California Industry Guidance for restaurants, wineries and bars, including, but not limited to, individual control measures and screening, cleaning and disinfecting protocols, and physical distancing." Declarations of Trever Shamshoian (ROA # 44) and Rich Buonantony (# 45).

"No patron, staff member, or adult entertainer has been exposed to COVID-19" and "no COVID-19 cases" have been traced back to Pacers and Cheetahs."  Plaintiffs have provided "a very safe place for live adult entertainment" and followed "both the letter and spirit of the TRO."  Declarations of Trever Shamshoian (ROA # 44) and Rich Buonantony (# 45).

The testimony of Shamshoian (ROA # 44) and Buonantony (# 45) are consistent with the opinion testimony of Dr. Lawrence Mayer who states, at paragraph 3 of his declaration (ROA # 41):

"I have been asked to opine on the issue of whether a restaurant would increase the risk to its patrons or employees if a dancer performing on a stage were present if the dancer is 15 feet away from all patrons and suitably masked.  There is no scientific evidence of increased risk to the patrons if dancing is allowed at a restaurant under those conditions."

Defendants have not submitted any evidence to refute the testimony of Shamshoian (ROA # 44), Buonantony (# 45) and Dr. Mayer (ROA # 41).  The Court infers that, based on the declaration of Panas, the County possesses contact tracing data and has the power to produce such evidence to refute Plaintiffs' assertions that Plaintiffs providing live adult entertainment and San Diego County businesses with restaurant service, such as Plaintiffs' establishments, subject to protocols, do **not** present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at

Home Order - to the spread of COVID in San Diego County.  Since the County could have produced "stronger evidence," the Court discounts the County's "weaker evidence."  CACI 203.

Accordingly, the Court finds that Plaintiffs have been devoid of COVID, have done nothing to contribute to the spread of COVID, and have honored their representations to Dr. Joel Day and the County.

In their oppositions, Defendants note that, since the Court issued the TRO, Defendants have "**changed the State's treatment of live performances held at restaurants, by authorizing such performances under the same conditions under which restaurants may operate.**" (emphasis added by the Court) Defendants assert that "This motion is therefore moot." (emphasis added by the Court) ROA # 54 at pages 10 – 11; ROA # 50 at page 2.

In Roman Catholic Diocese of Brooklyn v. Cuomo (November 25, 2020) - S. Ct. -; 2020 WL 6948354; 20 Cal. Daily Op. Serv. 11,976, Petitioners "filed § 1983 actions alleging that Governor's emergency Executive Order imposing occupancy restrictions on houses of worship during COVID-19 pandemic violated Free Exercise Clause."  (Likewise, Plaintiffs' claims include three counts for Violation of 42 U. S. C. § 1983.)  The Court enjoined Governor Cuomo from enforcing the Executive Order imposing restrictions on houses of worship.

The Court stated, in pertinent part:

"The dissenting opinions argue that we should withhold relief because the relevant circumstances have now changed.  After the applicants asked this Court for relief, the Governor reclassified the areas in question from orange to yellow, and this change means that the applicants may hold services at 50% of their maximum occupancy.  The dissents would deny relief at this time but allow the Diocese and Agudath Israel to renew their requests if this recent reclassification is reversed.

There is no justification for that proposed course of action.  **It is clear that this matter is not moot**. See Federal Election Comm'n v. Wisconsin Right to Life, Inc. 551 U. S. 449, 462, 127 S. Ct. 2652, 168 L. Ed.2d 329 (2007); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc. 528 U. S. 167, 189, 120 S. Ct. 693, 145 L. Ed.2d 610 (2000).  **And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange**. See, e.g., Susan B. Anthony List v. Driehaus 573 U. S. 149, 158, 134 S. Ct. 2334, 189 L. Ed.2d 246 (2014).  **The Governor regularly changes the classification of particular areas without prior notice.**  If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained.  At most Catholic churches, Mass is celebrated daily, and "Orthodox Jews pray in [Agudath Israel's] synagogues every day."  Application in No. 20A90, at 4.  Moreover, if reclassification occurs late in a week, as has happened in the past, there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes.  Thirteen days have gone by since the Diocese filed its application, and Agudath Israel's application was filed over a week ago.  While we could presumably act more swiftly in the future, there is no guarantee that we could provide relief before another weekend passes.  **The applicants have made the showing needed to obtain relief, and there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification.**" (emphasis added by the Court)

This record reflects that Defendants' latest "change" is consistent Plaintiffs' initial assertion that Defendants' "orders have undergone endless and bewildering changes."  ROA # 13 at page 9.

Like the Supreme Court in Roman Catholic Diocese of Brooklyn v. Cuomo, the Court finds that

| | |
|---|---|
| CASE TITLE: Midway Venture LLC vs County of San Diego [IMAGED] | CASE NO: **37-2020-00038194-CU-CR-CTL** |

Defendants' latest change does not render Plaintiffs' Application moot.

To avoid any confusion, the Court is deeply empathetic to the County and Dr. Wooten's dilemma in balancing their local responsibilities, based on the data in San Diego County, while subject to the State's threat "to withhold funding from counties that do not adhere to its guidance or enforce its orders." ROA # 50 at pages 3 – 4.

As Brent Panas, Chief of the County's COVID-19 Safe Reopening Compliance Team, declares "As the Governor and other State officials have made clear, local governments (including the County of San Diego) do not have authority to relax the State's COVID-19 public health restrictions and orders. While counties can adopt stricter requirements in their public health orders, they cannot affirmatively permit activities or business operations that violate the State's guidelines and orders." ROA # 52 at paragraph 6.

Nobody is in a better, more informed position to manage the local health conditions than Dr. Wooten. With full knowledge of current data, Dr. Wooten has purportedly represented that "penalizing sectors like restaurants and gyms for the case increase is wrong. 'Closure of indoor restaurants during wintertime will move people into homes and encourage high risk gatherings. Closing indoor capability contradicts the "Blueprint for a Safer Economy". Further, the County has taken steps to complete outbreak assessments, enforce compliance, and to educate and engage the community.'" The Court's November 23, 2020 Order (ROA # 50), at page 7, in the San Diego County Superior Court case entitled 640 Tenth LP vs. Newsom, case no. 37-2020-00041316-CU-MC-CTL.

The Court infers from Dr. Wooten's purported representations that she does not consider businesses with restaurant service, such as Plaintiffs' establishments, to be responsible for the increase in the County's COVID cases. ROA # 50 at pages 5 – 6; ROA # 52 at paragraph 4. Given every opportunity, the County has provided the Court with no evidence that San Diego County businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID. ROA # 52 at paragraph 7.

The obvious question, from the Court's perspective, is, in the absence of evidence, why is the State's Regional Stay at Home Order limiting San Diego County restaurant businesses "to take-out, pick-up, or delivery" rational? ROA # 54 at pages 9 – 10.

In support of their position, the State attached the Declaration of Dr. James Watt, MD, MPH, in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, executed and filed on November 30, 2020, in Ghost Golf, Inc. v. Newsom, No. 20CECG03170 (Fresno County Sup. Ct.). ROA # 55, Exh. F.

The Court does not question Dr. Watt's qualifications, as Chief of the Division of Communicable Disease Control of the Center for Infectious Diseases at the California Department of Public Health ("CDPH"), to form and express opinions on the subject of "COVID-19, short for coronavirus disease 2019." Paragraphs 2 – 15 of Dr. Watt's declaration. Dr. Watt's declaration provides a general overview of COVID-19 in California but says nothing to support restrictions, in addition to existing protocols, in San Diego County. Indeed, part of Dr. Watt's opinion testimony more corroborates than refutes the testimony of Shamshoian (ROA # 44), Buonantony (# 45) and Dr. Mayer (ROA # 41). See paragraphs 47 and 48 of Dr. Watt's declaration. Again, given every opportunity, the State has provided the Court with no evidence that San Diego County businesses with restaurant service, such as Plaintiffs' establishments,

who've implemented protocols as directed by the County, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.

In the absence of such evidence, Dr. Wooten's representation that "penalizing sectors like restaurants and gyms for the case increase is wrong" resonates with the Court.

The State argues that "When the defendant is a public official or agency, the court also considers the public interest. (Tahoe Keys Property Owners' Assn. v. State Water Resources Control Board (1994) 23 Cal. App. 4th 1459, 1472-73.)"  ROA # 54 at page 10.

In Roman Catholic Diocese of Brooklyn v. Cuomo, the Court stated:

"*Public interest*.  Finally, it has not been shown that granting the applications will harm the public.  As noted, the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease.  And the State has not shown that public health would be imperiled if less restrictive measures were imposed.

Members of this Court are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area.  **But even in a pandemic, the Constitution cannot be put away and forgotten.**  The restrictions at issue here, by effectively barring many from attending religious services, strike at the very heart of the First Amendment's guarantee of religious liberty.  Before allowing this to occur, we have a duty to conduct a serious examination of the need for such a drastic measure."  (emphasis added by the Court)

In his concurring opinion, Justice Gorsuch stated:

"Government is not free to disregard the First Amendment in times of crisis.  At a minimum, that Amendment prohibits government officials from treating religious exercises worse than comparable secular activities, unless they are pursuing a compelling interest and using the least restrictive means available.  See Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U. S. 520, 546, 113 S. Ct. 2217, 124 L. Ed.2d 472 (1993).  Yet recently, during the COVID pandemic, certain States seem to have ignored these long-settled principles.

...

At the same time, the Governor has chosen to impose no capacity restrictions on certain businesses he considers "essential."  And it turns out the businesses the Governor considers essential include hardware stores, acupuncturists, and liquor stores.  Bicycle repair shops, certain signage companies, accountants, lawyers, and insurance agents are all essential too.  So, at least according to the Governor, it may be unsafe to go to church, but it is always fine to pick up another bottle of wine, shop for a new bike, or spend the afternoon exploring your distal points and meridians.  Who knew public health would so perfectly align with secular convenience?"

True, the current case is not a Church case but, with Plaintiffs, the nature of their entertainment is entitled to First Amendment protection ("if only within the outer ambit of the First Amendment's protection.")  City of Erie v. Pap's A.M. (2000) 529 U. S. 277, 289; Krontz v. City of San Diego (2006) 136 Cal. App. 4th 1126, 1132.  Further, since the State and County's purpose in enacting the restrictions appear to be unrelated to suppressing Plaintiffs' expression, the restrictions "need only satisfy the "less

stringent," intermediate O'Brien standard. E.g., Johnson, supra, at 403, 109 S. Ct. 2533." The Court's application of a more stringent test in ruling on Plaintiffs' Application for a Temporary Restraining Order is vacated. Ironically, the "restrictions such as the no-touch and six-foot rules" at issue in the Krontz case are very much not at issue in this case; to wit, see Plaintiffs' self-imposed restrictions to satisfy the County's protocols ("- Stages to be located on two (2) foot platforms, fifteen (15) feet from any tables. - Stages to be roped off with signs strictly advising patrons not to pass within the fifteen-foot buffer.") Declarations of Jason P. Saccuzzo (ROA # 14), Trever Shamshoian (ROA # 15) and Rich Buonantony (ROA # 16).

Businesses with restaurant service, such as Plaintiffs' establishments, serve the public interest. These business establishments provide sustenance to and enliven the spirits of the community, while providing employers and employees with means to put food on the table and secure shelter, clothing, medical care, education and, of course, peace of mind for they and their families.

The State relies upon Jacobson v. Massachusetts (1905) 197 U. S. 11, 27 to assert that the "Challenged Orders Are a Permissible Exercise of the State's Emergency Powers." ROA # 54 at page 15. However, as Justice Gorsuch noted in his concurring opinion, "But Jacobson hardly supports cutting the Constitution loose during a pandemic. **That decision involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction.**" (emphasis added by the Court)

The State also asserts that "Restrictions on Live Entertainment Are Content-Neutral Time, Place, Manner Regulations that Survive Intermediate Scrutiny." "A time, place, and manner restriction on speech is valid if it: (a) is content neutral, (b) is narrowly tailored to serve a significant government interest, and (c) leaves open ample alternative channels for communication." (Klein v. San Diego County (9th Cir. 2006) 463 F. 3d 1029, 1034.)" ROA # 54 at page 15. However, shuttering Plaintiffs' establishments except "to take-out, pick-up, or delivery," in the absence of evidence to support the restrictions, is neither "neutral" nor "narrow." Defendants' characterization of Plaintiffs' establishments as restaurants or as non-essential does not dilute Plaintiffs' right to first amendment protection. ROA # 56 at page 8. Characterization of services as non-essential may be politically expedient but, in too many instances, is practically inconsistent and legally suspect; for example, houses of worship. The Court also questions whether "take-out, pick-up, or delivery" is consistent with the patrons' primary purpose in frequenting Pacers and Cheetahs, and therefore whether such restriction "leaves open ample alternative channels for communication" with the State and County.

In response to the Court's initial observation that "the County appears to have loosely, if not arbitrarily, enforced this prohibition" (ROA # 36 at page 4), the County asserts that "Plaintiffs have presented no evidence of selective enforcement of the Public Health Order by County Defendants, much less evidence of selective enforcement "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." [Murgia, supra, 15 Cal. 3d at 299, quoting Oyler, supra, 368 U. S. at 456.]" ROA # 50 at page 15.

In its opposition (ROA # 50), the County further asserts, at page 10:

"Contrary to Plaintiffs' contentions, County Defendants have in no way singled out Plaintiffs' establishments, or live adult entertainment in general, for enforcement activity under the Public Health Order. The 125 cease-and-desist letters, and seven Immediate Closure Orders, that County Defendants have issued through November 30, 2020, involved a wide array of business and other activities, including gyms, fitness centers, yoga studios, bars, restaurants, spas, fraternities and sororities, religious

entities, and entertainment centers. [Panas decl., at ¶¶ 13 - 14, and Exhs. 4 - 5 thereto.]  And with respect to live entertainment, Plaintiffs' businesses were not the only establishments that received a cease-and-desist letter from the County concerning live entertainment taking place in violation of the then- applicable State COVID-19 restrictions and the Public Health Order. [Panas decl., at ¶ 14.]"

The Court cannot find, based on this record, that the County has arbitrarily enforced the prohibition of live entertainment indoors at bars and restaurants; however, the County's issuance of "cease-and-desist letters, and Immediate Closure Orders, to "a wide array of business and other activities, including gyms, fitness centers, yoga studios, bars, restaurants, spas, fraternities and sororities, religious entities, and entertainment centers" does little, if anything, to demonstrate any nexus between businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, **and** the spread of COVID.

Defendants rely upon the State's Regional Stay Home Order.  ROA # 52 at par. 7; ROA # 55, Exh. "D."  Upon review, the Court notes that the State has created a series of Regions, each of which consists of several counties.  San Diego County is one of eleven counties (Imperial, Inyo, Los Angeles, Mono, Orange, Riverside, San Bernardino, San Diego, San Luis Obispo, Santa Barbara, Ventura) in the Southern California Region.  The State apparently measures the "ICU bed capacity" in each Region and imposes restrictions to "gatherings of any size, closes operations except for critical infrastructure and retail, and requires 100% masking and physical distancing."

The Court questions whether there is a rational nexus between the percentage of ICU bed capacity throughout the Southern California Region **and** Plaintiffs providing live adult entertainment and businesses with restaurant service, such as Plaintiffs' establishments, in San Diego County.  Defendants have presented no evidence that businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, have impacted ICU bed capacity throughout the Southern California Region (much less in San Diego County).

In <u>Jamison v. department of Transportation</u> (2016) 4 Cal. App. 5th 356, 361, 362, the Court stated:

"'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and non-issuance of the injunction. [Citations.]' (<u>Common Cause v. Board of Supervisors</u> (1989) 49 Cal. 3d 432, 441, 442.)  'The trial court's determination must be guided by a "mix" of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.]' (<u>Butt v. State of California</u> (1992) 4 Cal. 4th 668, 678.) However, '[a] trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.' (<u>Ibid</u>.)"

In <u>Smith v. Adventist Health System / West</u> (2010) 182 Cal. App. 4th 729, 749, the Court stated:

"A superior court must evaluate two interrelated factors when ruling on a request for a preliminary injunction: (1) the likelihood that the plaintiff will prevail on the merits at trial and (2) the interim harm that the plaintiff would be likely to sustain if the injunction were denied as compared to the harm the defendant would be likely to suffer if the preliminary injunction were issued. (<u>Cohen v. Board of Supervisors</u>, supra, 40 Cal. 3d at p. 286.)  Weighing these factors lies within the broad discretion of the superior court.  (<u>Ibid</u>.; see pt. VI., post, for discussion of <u>Butt v. State of California</u> (1992) 4 Cal. 4th 668.)

Plaintiffs have made an adequate showing that they have exhausted their capital trying to comply with Defendants' "endless and bewildering" orders, have sustained significant, if not draconian, losses, and are fearful that their businesses may be closed permanently if Defendants' latest orders are not enjoined.  ROA #'s 13 – 17.  The Court finds that Plaintiffs' evidence and arguments is credible.

Defendants, on the other hand, have provided the Court with no evidence that Plaintiffs providing live adult entertainment and San Diego County businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, present any risk – much less a greater risk than before Governor Newsom issued his December 3, 2020 Regional Stay at Home Order - to the spread of COVID.

Further, Defendants have presented no evidence that Plaintiffs providing live adult entertainment and San Diego County businesses with restaurant service, such as Plaintiffs' establishments, who've implemented protocols as directed by the County, have impacted ICU bed capacity throughout the Southern California Region (much less in San Diego County).

The Court finds that, based on this record, 1) the harm to Plaintiffs if the preliminary injunction is denied is greater than the harm to Defendants if the preliminary is granted; and 2) it is likely that Plaintiffs will prevail on the merits of one or more of their claims.

Pending the trial of this case, Defendants, and each of them and their respective agents and assigns, and any governmental entity or law enforcement officer, are hereby ENJOINED from enforcing the provisions of the cease and desist order, or any related orders including the State's Regional Stay Home Order, that prevent 1) Plaintiffs from providing live adult entertainment; and 2) San Diego County businesses with restaurant service, such as Plaintiffs' establishments, from continuing to operate their respective businesses, subject to protocols that are no greater than is essential to further Defendants' response to control the spread of COVID,

The Court emphasizes that the reach of the preliminary injunction is limited to 1) Plaintiffs providing live adult entertainment; and 2) San Diego County businesses with restaurant service, such as Plaintiffs' establishments, providing restaurant service, subject to protocols that are no greater than is essential to further Defendants' response to control the spread of COVID.

This order becomes effective immediately.

*Joel R. Wohlfeil*

———————————————
Judge Joel R. Wohlfeil